Yunchao Song (SBN 323484)
Juris Path Law Firm PC
17800 Castleton Street, Suite 316
City of Industry, CA 91748
Telephone: (626) 391-4015
Facsimile: (626) 604-0123
*paul.song@jpjplaw.com*

Attorneys for Petitioner Zhichao Xie

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZHICHAO XIE, an individual;<br><br>Petitioner,<br><br>v.<br><br>Warden of Adelanto ICE Processing Center; ANDRE QUINONES, Acting Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,<br><br>Respondents. | **Case No.**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241** |

Petitioner Zhichao Xie ("Mr. Xie" or "Petitioner") (A-Number: 213-605-386), petitions this Court for a writ of habeas corpus under 28 U.S.C. §2241 to remedy Respondents' unlawful detention of him, and states as follows:

## INTRODUCTION

1. Petitioner is a citizen of the People's Republic of China detained at the Adelanto ICE Processing Center, Adelanto, California. Petitioner, by and through his undersigned counsel, hereby files this petition for writ of habeas corpus to compel his immediate release from

immigration detention where he has been held by the U.S. Department of Homeland Security ("DHS") since August 26, 2026, without being afforded a pre-deprivation hearing.

2. The Due Process Clause of the Fifth Amendment requires the government to provide noncitizens with notice and a hearing prior to detention. Here, Petitioner's rights were violated when he was detained without such process and continue to be violated each day that he remains detained.

## CUSTODY

3. Petitioner is currently in Respondents' physical custody. Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California. He is under Respondents' and their agents' direct control.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §2241, Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"); and 28 U.S.C. §1331, as Petitioner is presently in custody under the color of the authority of the United States, and such custody violates the Constitution, law, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. §2241.

5. Venue lies in the Central District of California, the judicial district in which Petitioner is currently detained. Venue is also properly in this Court pursuant to 28 U.S.C. §1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

6. Petitioner is a Chinese citizen who entered the United States on or about June 21, 2019, without inspection.

7. The Warden of Adelanto ICE Processing Center is sued in his/her official capacity. He/She has immediate physical custody of Petitioner under the facility's contract with ICE to detain noncitizens. The Warden is a legal custodian of Petitioner and has the authority to release him.

8. Respondent ANDRE QUINONES is sued in his official capacity as Acting Director of Enforcement and Removal Operations of ICE's Los Angeles Field Office. Respondent

QUINONES is a legal custodian of Petitioner and has the authority to release him.

9. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of ICE. In this capacity, Respondent VENTURELLA directs and oversees ICE's Enforcement and Removal Operations, the component agency responsible for Petitioner's detention. Respondent VENTURELLA is a legal custodian of Petitioner and has the authority to release him.

10. Respondent TODD BLANCHE is sued in his official capacity as the Attorney General of the United States and the head of the U.S. Department of Justice ("DOJ"). In that capacity, he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent BLANCHE is a legal custodian of Petitioner.

11. Respondent MARKWAYNE MULLIN is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent MULLIN is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. Respondent MULLIN is a legal custodian of Petitioner.

## STATEMENT OF FACTS

12. Mr. Xie entered the United States on or about June 21, 2019, without inspection. He has continuously resided in the United States since that time.

13. On or about October 30, 2019, Mr. Xie affirmatively filed an application for asylum (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"). USCIS accepted the application and issued a receipt notice. Mr. Xie was subsequently granted an Employment Authorization Document, authorizing him to work lawfully in the United States.

14. Since that time, Mr. Xie has worked to support himself, paid taxes, attended church regularly, and lived openly as a contributing member of his community.

15. On or about August 12, 2026, Mr. Xie was arrested by the Glendale Police Department and was released on citation the following day. To date, no criminal charges have been filed, and no conviction has resulted from that arrest.

16. On or about August 26, 2026, Mr. Xie was arrested and taken into ICE custody at his residence in Glendora, California. Early that morning, a team of ICE officers arrived at Mr. Xie's residence. Without identifying themselves or explaining the purpose of their presence, the officers asked a family member to bring Mr. Xie outside. When Mr. Xie came outside, the officers arrested him in front of the garage. The officers did not explain the basis for his arrest or present him with a warrant. Only after a family member asked who they were, as Mr. Xie was being taken away, did the officers identify themselves as ICE. Mr. Xie has remained in ICE custody since that date.

17. Following his arrest, Mr. Xie was placed into removal proceedings, which remain pending before the Immigration Court.

18. When Mr. Xie was taken into ICE custody, ICE confiscated his personal belongings, including his cellular phone.

19. At no time prior to his detention was Mr. Xie given notice or any opportunity to contest his detention. Nor was he presented with a warrant authorizing his arrest at the time he was taken into custody.

20. At Mr. Xie's request, an Immigration Judge conducted a custody redetermination hearing on September 15, 2026, twenty days after ICE took him into custody. The Immigration Judge denied Mr. Xie's request for release, concluding that he had failed to establish that he was not a danger to the community or such a significant flight risk that no amount of bond or alternatives to detention would be sufficient to mitigate that risk.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. In habeas claims, exhaustion of administrative remedies is a prudential matter, not a jurisdictional requirement. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

22. A court may independently waive the requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

23. Here, any administrative exhaustion requirement should be waived because pursuit

of administrative remedies would be futile and would not provide an adequate remedy.

24. Pursuit of administrative remedies would be futile because Petitioner challenges the constitutionality of his continued detention, and the Board of Immigration Appeals lacks authority to adjudicate such constitutional claims. *See In re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.").

25. Administrative remedies are also inadequate. Petitioner's claim is that Respondents deprived him of liberty without the process the Due Process Clause requires before a deprivation. An administrative appeal is by its nature a post-deprivation remedy, and it therefore cannot supply the pre-deprivation process that Petitioner was owed.

## LEGAL FRAMEWORK

26. The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, §9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241. This includes challenges by noncitizens in immigration related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

27. Recently, the Ninth Circuit held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 U.S. App. LEXIS 22798 (9th Cir. July 30, 2026).

28. 8 U.S.C. § 1226(a) is the discretionary detention authority for noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Under this statute, a noncitizen would be entitled to a bond hearing, and any custody redetermination would have to be based on whether the noncitizen is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

29. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

30. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

31. Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop*., 510 U.S. 43, 53, 59-61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

**CLAIM FOR RELIEF**

**COUNT ONE**

**(Violation of the Immigration and Nationality Act; 8 U.S.C. §§ 1226(a))**

32. Petitioner repeats and incorporates by reference the allegations set forth above.

33. 8 U.S.C. § 1226(a) applies to noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." Under § 1226(a), detention is discretionary, and individuals may be released on bond or conditional parole as approved by the Attorney General.

34. Under § 1226(a), a noncitizen may be arrested only on a warrant and would be entitled to a bond hearing before an immigration judge and must be released if the noncitizen "does

not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

35. Petitioner had been continuously residing in the interior of the United States for more than seven years when ICE arrested him. He had a pending affirmative asylum application that USCIS had accepted in October 2019 and had been issued an Employment Authorization Document. He lived and worked openly in the community and was arrested at his residence in Glendora, California. Under *Rodriguez Vazquez*, Petitioner's detention is therefore governed by § 1226.

36. Nor is Petitioner subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii). Although Petitioner was arrested by the Glendale Police Department on August 12, 2026, he was released on citation the following day, and no criminal charges have been filed arising from that arrest. Section 1226(c)(1)(E)(ii) does not mandate detention based solely on a prior arrest where no qualifying criminal charge remains pending and the noncitizen has neither admitted to nor been convicted of a qualifying offense. *See Astudillo Serey v. Warden*, No. 1:26-cv-02907-DC-SCR, 2026 U.S. Dist. LEXIS 184812 (E.D. Cal. Aug. 17, 2026). Accordingly, Petitioner is not subject to mandatory detention under § 1226(c)(1)(E)(ii), and his detention is governed by the discretionary detention framework of § 1226(a).

37. Respondents nevertheless arrested Petitioner without a warrant under § 1226(a).

38. By detaining Petitioner without providing a warrant, Respondents have acted in excess of their statutory authority under 8 U.S.C. § 1226(a). As a result, Petitioner's continued detention violates the Immigration and Nationality Act and is unlawful.

39. Therefore, Petitioner respectfully requests that this Court order his release from detention.

## COUNT TWO

## (Violation of the Due Process Clause of the Fifth Amendment)

40. Petitioner repeats and incorporates by reference the allegations set forth above.

41. Petitioner's detention violates the procedural protections guaranteed by the Due Process Clause of the Fifth Amendment. Petitioner possesses a protected liberty interest in his

continued freedom from physical restraint, and by detaining him without advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the basis for his detention, Respondents deprived Petitioner of that liberty without constitutionally adequate process.

42. Evaluating the scope of Petitioner's due process rights requires a two-step inquiry: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

43. Courts have repeatedly recognized that noncitizens who have been permitted to live at liberty in the United States while pursuing immigration relief possess a protected liberty interest in their continued freedom from detention. *See Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564 (C.D. Cal. Apr. 13, 2026) (preliminary injunction granting release and finding liberty interest for noncitizen who was granted employment authorization, and then was arrested by immigration authorities for the first time); *Xiaoqin Dai v. James Janecha*, et al. No. 5:26-cv-03966-PD (C.D. Cal. July 24, 2026).

44. Petitioner entered the United States in June 2019 and affirmatively applied for asylum with USCIS. USCIS accepted his application and subsequently granted him employment authorization. For more than seven years before his arrest, Mr. Xie remained at liberty, lived openly in the community, worked consistently, and paid taxes. Despite having knowledge of Mr. Xie's presence through his pending asylum application and employment authorization, the Government did not detain him during that period. Mr. Xie therefore developed a substantial liberty interest in his continued freedom from physical restraint. *See Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").

45. Once a protected liberty interest is established, courts determine what procedural protections are constitutionally required by applying the three-factor balancing test set forth in

*Mathews v. Eldridge*: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

46. The first *Mathews* factor strongly favors Mr. Xie. "Freedom from imprisonment--from government custody, detention, or other forms of physical restraint--lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. For more than seven years, Mr. Xie lived at liberty while pursuing his affirmative asylum application. During that period, he obtained employment authorization from the Government, worked consistently, paid taxes, and established a life in his community. His interest in remaining free from physical confinement is therefore substantial. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025).

47. The second *Mathews* factor also strongly favors Mr. Xie. Before arresting him, Respondents provided no notice, hearing, or other procedure through which he could demonstrate that detention was unnecessary. Although Mr. Xie was arrested by the Glendale Police Department on August 12, 2026, he was released on citation the following day, and no criminal charges have been filed against him arising from that arrest. An arrest, standing alone, has little probative value in establishing that an individual actually engaged in misconduct. *See Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232, 241 (1957) ("The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct."). Mr. Xie had lived openly in the United States for more than seven years, maintained a pending affirmative asylum application with USCIS, possessed government-issued employment authorization, worked consistently, and had no criminal convictions. Yet Respondents afforded him no opportunity, before taking him into immigration custody, to address the August 12 incident or otherwise demonstrate before a neutral decision-maker that he posed neither a danger to the community nor a risk of flight and that physical detention was unnecessary. Under these circumstances, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

48. The third *Mathews* factor likewise favors Mr. Xie. Respondents' interest in detaining him without any pre-deprivation process was minimal. For more than seven years, the Government knew of Mr. Xie's presence through his affirmative asylum application and employment authorization, yet he remained at liberty. Providing Petitioner notice and an opportunity to be heard before depriving him of his liberty would have imposed little additional administrative burden. Indeed, a hearing before a neutral decision-maker is "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public by keeping Petitioner detained. *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated* on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As one court has put it, "[i]n immigration court, custody hearings are routine." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

49. On balance, the *Mathews* factors establish that Mr. Xie was entitled to notice and an opportunity to be heard before Respondents deprived him of his liberty. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

50. Courts typically require evidence of urgent concerns or an especially strong government interest to dispense with the default requirement of a pre-deprivation hearing. The existence of criminal charges or even a criminal conviction does not, standing alone, establish such urgency. *See Serey v. Warden*, No. 1:26-cv-02907-DC-SCR, 2026 U.S. Dist. LEXIS 184812 (E.D. Cal. Aug. 17, 2026) (finding, despite the petitioner's criminal conviction, that respondents had not identified any exigency that would have made a pre-deprivation hearing impracticable).

51. Respondents provided Mr. Xie neither advance notice nor a pre-deprivation hearing before arresting him and placing him in immigration detention. Nor did any emergency or other extraordinary circumstance justify postponing process until after Mr. Xie had already been deprived of his liberty. His arrest and detention without constitutionally adequate pre-deprivation process

therefore violated the Due Process Clause. *See J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025).

52. Courts confronting materially similar due process violations have consistently held that immediate release, rather than a delayed post-deprivation hearing, is the appropriate remedy because it restores the *status quo* ante that existed before Respondents violated a noncitizen's constitutional rights. *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Eduardo C.A. v. Cruz*, No. 1:26-cv-06055-TLN-CSK, 2026 U.S. Dist. LEXIS 178245 (E.D. Cal. Aug. 10, 2026) ("The appropriate remedy in this case is not to bring the government into conformity with its governing statutes; it is to release Petitioner from unlawful custody.").

53. Although Petitioner received a bond hearing after his detention, that post-deprivation hearing did not cure the constitutional violation arising from Petitioner's detention without adequate pre-deprivation process. As many courts have recognized, a post-detention bond hearing cannot remedy that violation because, by the time such a hearing occurs, the petitioner "will have already suffered the harm" the requested procedural safeguard was intended to prevent -- potentially erroneous detention. *See, e.g., Domingo v. Kaiser*, Case No. 25-cv-05893-RFL, 2025 WL 1940179 (N.D. Cal. July 14, 2025); *Charan S. v. Warden, CA City*, Case No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months").

54. Moreover, "allowing the government to cure such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); *see also Eduardo Marquez Ibarra v. Kristi Noem*, No. 5:26-cv-01007-MEMF-MAA (C.D. Cal. Mar. 20, 2026); *Reyes Servin v. Semaia*, No. 5:26-cv-02745-MAR, 2026

U.S. Dist. LEXIS 130761 (C.D. Cal. June 4, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect").

55. Accordingly, Petitioner is entitled to immediate remedial release rather than a belated bond hearing.

**PRAYER FOR RELIEF**

Based on the foregoing, Petitioner respectfully requests this Court to grant the following:

1. Assume jurisdiction over this matter;
2. Issue the writ of habeas corpus and order Respondents to show cause, within three days of Petitioner's filing this petition, why the relief he seeks should not be granted;
3. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;
4. Declare that Respondents' detention of Petitioner violates the INA and the Due Process Clause of the Fifth Amendment;
5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately without the imposition of any unreasonable conditions;
6. Order Respondents to return all of Petitioner's personal belongings, including his cellular phone;
7. In the alternative, only if the Court concludes that Petitioner is not legally entitled to immediate release under the present circumstances based on a specific legal authority, order Respondents to provide Petitioner with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. §1226(a) within 7 days, with the Court specifying that, at such hearing, the government bears the burden of establishing by clear and convincing evidence that continued detention is justified;
8. Upon release, enjoin Respondents from re-arresting or detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proof;

9. Require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing;
10. Enjoin Petitioner's removal from the United States pending a final decision on this habeas action;
11. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis allowed by law;
12. Grant further relief as the Court finds just and proper.

Dated: September 23, 2026 Juris Path Law Firm, PC

*/s/Yunchao Song*

Yunchao Song, Esq.
Attorney for Petitioner Zhichao Xie